UNITED STATES of America,

v.

Omar Mohammed Ali REZAQ, a/k/a
Omar Marzouki, Defendant.

Criminal No. 93–0284 (RCL).

United States District Court,
District of Columbia.

March 12, 1996.

Joseph Valder, Asst. U.S. Atty., U.S. Attorney's Office, Washington, DC, Scott Glick, U.S. Department of Justice, Washington, DC, for U.S.

Robert Tucker, Teresa Alva, Federal Public Defender for District of Columbia, Washington, DC, for defendant.

## MEMORANDUM OPINION AND ORDER

LAMBERTH, District Judge.

This matter comes before the court on a motion *in limine* filed by the United States

regarding defendant's insanity defense,[1] and a motion filed by defendant requesting a stay of the court's discovery Order of December 14, 1995. The government's motion actually consists of three separate requests. The government first seeks to preclude all evidence related to defendant's insanity defense on the ground that defendant's notice of an insanity defense, filed pursuant to Federal Rule of Criminal Procedure 12.2 ("Rule 12.2") was untimely, and that defendant had not shown "cause" sufficient to justify a late filing. *See* Govt.'s Mot., at 3–6. This first request was denied in open court on February 5, 1996. In the second part of the government's motion, the government moves the court to exclude all of defendant's lay and expert evidence related to his insanity defense on relevancy grounds or, alternatively, on a finding that defendant's evidence is needlessly confusing and will mislead the jury. *See* Govt.'s Mot., at 6–18. In the last part of the government's motion, the government requests that the court conduct a pretrial hearing to determine the scope of lay and expert evidence that defendant intends to introduce in support of his insanity defense. *See* Govt.'s Mot., at 18–24. Defendant's motion seeks a stay of the discovery of expert witnesses as outlined in the court's discovery Order of December 14, 1995 in light of the challenge to defendant's insanity defense posed by the government's motion *in limine*.

Upon consideration of the filings and arguments of counsel with respect to the two remaining parts of the government's motion, the court shall grant in part and deny in part the government's motion. Furthermore, in light of the court's ruling on the government's motion *in limine*, the court shall deny defendant's motion to stay the court's discovery Order of December 14, 1995. The court's reasoning is set forth below.

1. The complete title of the government's motion is "United States Motion–In–Limine to Preclude Lay and Expert Evidence in Regard to Defendant Rezaq's Rule 12.2 Notice and Motion for Pre-Trial Hearing to Determine the Admissibility and Scope of Certain Evidence."

2. The text of defendant's Rule 12.2 notice is as follows: Defendant gives notice pursuant to

## DISCUSSION

On November 1, 1995, defendant provided notice to the government, pursuant to Rule 12.2, of his intent to rely on a defense of temporary insanity and to introduce expert testimony to negate the *mens rea* element of the offense of aircraft piracy.[2] On the same day, defense counsel also notified the government that defendant had been evaluated by three expert psychologists—Drs. Nuha Abudabbeh, John Wilson, and Harvey Dondershine—as part of the preparation of defendant's insanity defense. All three experts conducted psychological testing on defendant, and diagnosed the defendant as suffering from post traumatic stress disorder ("PTSD"). Defendant provided the reports to the government and, shortly thereafter, the government filed the present motion *in limine* to preclude defendant from introducing lay and expert evidence related to the insanity defense, and requested a pretrial hearing to determine the admissibility and scope of the evidence that defendant intends to introduce in support of his insanity defense. Defendant responded by filing a motion to stay the court's Discovery Order of December 14, 1995.

The government's first argument for preclusion—that defendant's notice was untimely—has already been rejected by the court. The remaining portions of the government's motion and defendant's motion to stay the court's Discovery Order of December 14, 1995 are addressed *seriatim*.

### A. Motion In Limine Regarding Defendant's Rule 12.2 Evidence

**1. Preclusion of Evidence Offered by Defendant Pursuant to Rule 12.2(b) to Negate the Mens Rea Element of the Offense**

■ Rule 12.2(b) permits a defendant to introduce "expert testimony relating to a

Fed.R.Crim.P. 12.2(a) that he intends to rely upon the defense of insanity at the time of the alleged offense, and, pursuant to Fed.R.Crim.P. 12.2(b), the he intends to introduce expert testimony relating to a mental disease or defect or any other mental condition of the defendant bearing on the issue of guilt.
Def.'s Rule 12.2. Notice, at 1.

mental disease or defect or any other mental condition of defendant bearing upon the issue of guilt" to prove that defendant did not possess the requisite *mens rea* of a specific intent crime. *See* Fed.R.Crim.P. 12.2(b). The government argues that defendant should be precluded from introducing any evidence under Rule 12.2(b) because aircraft piracy—the crime with which defendant is charged—is *not* a specific intent crime. Accordingly, the government moves this court to enter an order precluding the defendant from offering evidence pursuant to Rule 12.2(b), and from making any reference to such evidence in his opening statement.

█ Defendant disputes the government's characterization of the offense of aircraft piracy as a specific intent crime,[3] but claims that the issue whether to preclude the defendant from introducing evidence pursuant to Rule 12.2(b) is mooted by the fact that defendant intends neither to offer expert evidence concerning defendant's *mens rea* at the time of the offense nor to request a jury instruction that expert evidence may be considered in regard to that issue. *See* Def.'s Opp., at 10–11.

█ The government correctly points out that defendant's present position on Rule

12.2(b) evidence is inconsistent with the Rule 12.2 notice initially filed by defendant. The notice states explicitly that *"pursuant to Fed. R.Crim.P. 12.2(b)*, the [defendant] intends to introduce expert testimony relating to a mental disease or defect or any other mental condition of the defendant bearing on the issue of guilt." Def.'s Rule 12.2. Notice, at 1. In any event, defendant does not object to the government's request for an order precluding defendant both from introducing evidence pursuant to 12.2(b) and from making reference to any such evidence in defendant's opening statement. Accordingly, the government motion *in limine*, with respect to 12.2(b) evidence, shall be granted.[4]

### 2. Preclusion of Evidence Offered By Defendant Pursuant to Rule 12.2(a) In Support of Defendant's Affirmative Defense of Insanity

The government also seeks to preclude defendant from introducing lay and expert evidence, pursuant to Rule 12.2(a), in support of his affirmative defense of insanity. Defendant's insanity defense is based on a claim that defendant, at the time of the offense, suffered from PTSD. According to the government, lay and expert evidence of defen-

---

**3.** Defendant argues that, although *most courts have held aircraft piracy to be a general intent crime,* the indictment in this case contains a specific intent allegation that the defendant intentionally killed two passengers. Indeed, the indictment alleges that defendant "seize[d] and exercise[d] *control over"* the aircraft: (1) "by force"; (2) "by threat of force"; and (3) "by other forms of intimidation, including intentionally killing" two passengers and "attempting to kill three other passengers." Indictment No. 93–0284, at ¶ 2. The government, however, is only *required to prove one* of the three ways in which defendant "seize[d] and exercise[d] control over" the aircraft, *see, e.g., United States v. Boyle,* 675 F.2d 430, 433 (1st Cir.1982); *United States v. McCann,* 465 F.2d 147, 162 (5th Cir.1972), *cert. denied,* 412 U.S. 927, 93 S.Ct. 2747, 37 L.Ed.2d 154 (1973), and defendant argues only that the third allegation contains a specific intent requirement. It is clear, however, with respect to the first two allegations that the government need only prove that defendant had the general intent to hijack the aircraft to obtain a conviction. The fact that defendant was additionally charged with "seiz[ing] and exercis[ing] control over" the aircraft "by other forms of intimidation, including intentionally killing" two passengers does not

transform aircraft piracy from a general intent to crime to one that requires specific intent. Indictment No. 93–0284, at ¶ 2.

**4.** It should be noted that, even if defendant objected to the government's motion with respect to .12.2(b) evidence, the government, in all likelihood, would have succeeded on the merits. As discussed above, aircraft piracy is a general intent crime, and in view of the changes in the federal law since 1984, defendant would precluded as a matter of law from introducing evidence of "mental disease or defect or any other mental condition" that bears on the issue whether defendant possessed the requisite *mens rea* to commit the crime. *See United States v. Yunis,* 924 F.2d 1086, 1096 (D.C.Cir.1991); *United States v. Gold,* 661 F.Supp. 1127, 1131 (D.D.C.1987). *Accord United States v. Castaneda–Reyes,* 703 F.2d 522, 525 (11th Cir.) ("[T]he offense of aircraft piracy is a general intent crime and, thus, a defense of diminished mental capacity, short of a claim of insanity, ... is inappropriate."), *cert. denied,* 464 U.S. 856, 104 S.Ct. 174, 78 L.Ed.2d 157 (1983); *United States v. Busic,* 592 F.2d 13, 21 (2d Cir. 1978) (holding that evidence of "psychological necessity" is inadmissible in an aircraft piracy prosecution under Rule 12.2(b)).

dant's PTSD diagnosis is irrelevant to an insanity defense because defendant's case of PTSD is not of sufficient severity to constitute an affirmative defense of insanity under 18 U.S.C. § 17(a). The government also contends that, even if defendant's evidence were relevant to a viable insanity defense, such evidence should nevertheless be precluded by the court because it has a strong tendency to either confuse the issues or mislead the jury.

▬▬ The affirmative defense of insanity is set forth in 18 U.S.C. § 17(a).[5] The requirements of section 17(a) are clear: unless the mental condition claimed by defendant was "severe" and resulted in the inability of defendant to "appreciate the nature and quality or wrongfulness of his acts," the "[m]ental disease or defect does not ... constitute [an affirmative] defense." 18 U.S.C. § 17(a). Thus, the relevance of the evidence pertaining to defendant's PTSD diagnosis turns on whether defendant's case of PTSD is of sufficient severity to constitute an affirmative defense of insanity.[6]

Courts have generally taken a liberal approach to the admissibility of evidence in support or contradiction of the affirmative defense of insanity. *See United States v. Brawner*, 471 F.2d 969, 994–95 (D.C.Cir. 1972); *accord United States v. Alexander*, 805 F.2d 1458, 1464 (11th Cir.1986) (noting that a court "should be liberal in admitting

testimony (and evidence) regarding the issue of insanity"); *United States v. McRary*, 616 F.2d 181, 184 (5th Cir.1980) (holding that a "court should be liberal in ruling on the admissibility of evidence bearing on that issue [insanity]" ), *cert. denied*, 456 U.S. 1011, 102 S.Ct. 2306, 73 L.Ed.2d 1307 (1982); *United States v. Ives*, 609 F.2d 930, 932–33 (9th Cir.), *cert. denied*, 445 U.S. 919, 100 S.Ct. 1283, 63 L.Ed.2d 605 (1980); *United States v. Smith*, 507 F.2d 710, 711 (4th Cir. 1974) ("[A] trial judge should permit 'an unrestricted inquiry into the whole personality of defendant' and should be free in his admission of all possibly relevant evidence.").

▬▬ The three reports by defendant's experts, when reviewed as a whole, clearly indicate that defendant's diagnosis of PTSD meets the test of insanity as set out in 18 U.S.C. § 17(a).[7] Dr. Dondershine's report concluded that defendant suffered from what can only be described as a severe case of PTSD and depression that "seriously impaired" his ability to judge the wrongfulness of his conduct. According to Dr. Dondershine, at the time of the hijacking, defendant's "personality was fragmenting and the parts—perception, reason, judgment, contemplation of right and wrong, and assessment of consequences—were no longer fully [operative]." [8] *Id.* at 6. Similarly, Dr. Wilson concluded that, at the time of the offense,

---

**5.** 18 U.S.C. § 17(a) provides:

It is an affirmative defense to a prosecution under any Federal statute that, at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or wrongfulness of his acts. Mental disease or defect does not otherwise constitute a defense.

*Id.*

**6.** A court's "severity" analysis under section 17(a) consists of more than locating the magical word "severe" in the diagnosis. Rather, section 17(a) contemplates a more thoroughgoing approach, in which a court reviews the diagnosis for overall indications of the severity of defendant's mental disease or defect. The mere presence of the word "severe" in a diagnosis that suggests a mild condition will not constitute a defense under section 17(a). Similarly, the absence of the word "severe" will not *necessarily* mean that the condition diagnosed does not meet the standards of section 17(a).

**7.** The court shall unseal the portions of the three expert reports discussed herein for the purpose of resolving the pending motion. The remaining portions of these reports, however, shall remain sealed to protect defendant against unwanted publicity and the possibility of tainting the jury pool.

**8.** Of course, Federal Rule of Evidence 704(b) prevents Dr. Dondershine as well as any other expert witness from testifying as to defendant's ability or inability to appreciate the wrongfulness of his acts. *See* Fed.R.Evid. 704(b); *accord United States v. Hiebert*, 30 F.3d 1005, 1008 n. 2 (8th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 606, 130 L.Ed.2d 516 (1994). The resolution of this ultimate issue is left exclusively to the trier of fact. However, an expert witness is permitted to testify as to the severity of defendant's illness, thereby allowing the trier of fact to conclude that as a result of the illness, defendant could not appreciate the nature and quality or wrongfulness of his acts.

defendant "suffered from Post Traumatic Stress Disorder and Major Depression," and as a result of this illness, "was unable to appreciate [the] wrongfulness of his conduct." Wilson Report, November 30, 1995 at 7. He also described defendant's mental state at the time of the hijacking as "fragile, vulnerable, and unstable." *Id.* at 5.

Dr. Abudabbeh diagnosed defendant's PTSD as less severe than the others. Although Dr. Abudabbeh concluded in the report that "[o]n November 23–24, 1985, Mr. Rezaq did suffer from Posttraumatic Stress Disorder, Chronic," and that "as a result of his mental illness, Mr. Rezaq was unable to appreciate the wrongfulness of his acts . . . ." Abudabbeh Report, Dec. 1995, at 8., conspicuously absent from Dr. Abudabbeh's report is the kind of description of defendant's condition that would indicate that defendant case of PTSD and depression was indeed severe. Nevertheless, these three reports, when reviewed as a whole, indicate that defendant's case of PTSD meets the test of insanity as set out in 18 U.S.C. § 17(a). Accordingly, defendant's expert evidence cannot be excluded on relevancy grounds.

■ The government also maintains that, even if the evidence is relevant to defendant's insanity defense, it should nevertheless be precluded by the court because its "probative value is substantially outweighed by the danger of . . . confusion of the issues, or misleading the jury." Fed.R.Evid. 403. The government, however, provides no support for this contention. Rather, the government merely recites a concern raised by Congress when it passed the Insanity Defense Reform Act of 1984 that psychiatric testimony, in certain instances, may be needlessly confusing. *See* Govt.'s Mot., at 13. The government, however, has not asserted that the psychiatric evidence *in this case* is either needlessly confusing or has the potential to mislead the jury. The court therefore finds that the probative value of defendant's expert testimony in support of his insanity defense is not substantially outweighed by the risk of unfair prejudice. Accordingly, the court shall deny the part of the government's motion *in limine* that seeks to preclude the defendant from introducing lay and expert testimony, pursuant to Rule 12.2(a), in support of his insanity defense.

### B. Government's Request for a Preliminary Hearing

The government also moves the court to enter an Order directing defendant to introduce evidence at a pretrial hearing so that the court may determine the admissibility and scope of the lay and expert testimony and evidence that defendant intends to offer at trial in support of his insanity defense pursuant to Rule 12.2(a). The government, however, cites a series of cases that support an entirely different proposition—that defendant should be required to make an additional proffer with respect to evidence offered under *Rule 12.2(b)* to negate an element of the offense. *See* Govt.'s Mot., at 19–22 (citing *United States v. Childress,* 58 F.3d 693 (D.C.Cir.) (evidence of mental retardation offered under Rule 12.2(b) to negate specific intent), *cert. denied,* —— U.S. ——, 116 S.Ct. 825, 133 L.Ed.2d 768 (1996); *United States v. Cameron,* 907 F.2d 1051 (11th Cir.1990) (psychiatric evidence offered under Rule 12.2(b) to negate specific intent); *United States v. Fazzini,* 871 F.2d 635 (7th Cir.) (evidence of drunkenness offered under Rule 12.2(b) to negate intent), *cert. denied,* 493 U.S. 982, 110 S.Ct. 517, 107 L.Ed.2d 518 (1989); *United States v. Click,* 807 F.2d 847 (9th Cir.1987) (evidence of medical records offered under 12.2(b) to determine whether defendant entered false confession); *United States v. Gold,* 661 F.Supp. 1127 (D.D.C.1987) (whether evidence offered under Rule 12.2(b) addressed the issue of specific intent); *United States v. Shorter,* 618 F.Supp. 255 (D.D.C. 1985) (evidence of gambling addiction offered under Rule 12.2(b) to negate willfulness in tax prosecution).

■ A more detailed proffer may be necessary with respect to notices under Rule 12.2(b) in light of the fact that many crimes are general intent offenses, and in such cases, psychological evidence is deemed not relevant. *See United States v. Cameron,* 907 F.2d 1051, 1063 n. 20 (11th Cir.1990); *accord United States v. Fazzini,* 871 F.2d 635, 640–41 (7th Cir.), *cert. denied,* 493 U.S. 982, 110 S.Ct. 517, 107 L.Ed.2d 518 (1989); *United States v. Twine,* 853 F.2d 676, 679 (9th Cir.

1988); *United States v. White,* 766 F.2d 22 (1st Cir.1985); *United States v. Gold,* 661 F.Supp. 1127 (D.D.C.1987); *United States v. Frisbee,* 623 F.Supp. 1217, 1219–23 (N.D.Cal. 1985). Moreover, "[b]ecause psychiatric evidence (1) will only rarely negate specific intent, (2) presents an inherent danger that it will distract the jury's [sic] from focusing on the actual presence or absence of *mens rea,* and (3) 'may easily slide into wider usage that opens up the jury to theories of defense more akin to justification,' district courts must examine such psychiatric evidence carefully to ascertain whether it would, if believed, 'support a *legally acceptable* theory of lack of *mens rea.*'" *Cameron,* 907 F.2d at 1067 (citations omitted).

Thus, courts in this Circuit have generally followed the approach articulated in *United States v. Brawner,* 471 F.2d 969 (D.C.Cir. 1972) when dealing with evidence offered pursuant to Rule 12.2(b). In *Brawner,* the court observed:

> Our rule permits the introduction of expert testimony as to abnormal condition if it is relevant to negative, or establish the specific mental condition that is an element of the crime. The receipt of this expert testimony to negative the mental condition of specific intent requires careful administration by the trial judge. *Where the proof is not offered in the first instance as evidence of exonerating mental disease or defect within the ALI rule* the judge may, and ordinarily would, require counsel first to make a proffer of the proof to be adduced outside the presence of the jury. The judge will then determine whether the testimony is grounded in sufficient scientific support to warrant use in the courtroom, and whether it would aid the jury in reaching a decision on the ultimate issues.

*Id.* at 1002 (emphasis added). *Brawner* remains the law of this Circuit, *see United States v. Shorter,* 618 F.Supp. at 259, even after the passage of the Insanity Defense Reform Act of 1984. *See Childress,* 58 F.3d at 730; *Gold,* 661 F.Supp. at 1130–31.

■■■ Defendant, however, no longer seeks to introduce evidence pursuant to Rule 12.2(b), and instead chooses to introduce lay and expert evidence only in support of a full-fledged insanity defense pursuant to *Rule 12.2(a).* It is clear that had defendant sought to introduce this evidence under 12.2(b) on the *mens rea* issue, the court would have been obliged to conduct a preliminary hearing on the matter. Only in exceptional circumstances, however, is the government entitled to the same sort of detailed proffer with respect to Rule 12.2(a) evidence.

Perhaps the strongest case for requiring defendant to make a more detailed proffer on Rule 12.2(a) evidence is the case in which the government seeks to prevent the interposition of an insanity defense because there is insufficient evidence of a severe mental disease or defect. The government cites three cases—*United States v. Meader,* 914 F.Supp. 656, 1996 WL 65136 (D.Me.1996), *United States v. Duggan,* 743 F.2d 59, 80 (2d Cir. 1984), and *United States v. Cameron*—in which the possibility of a more detailed proffer of evidence offered pursuant to Rule 12.2(a) was entertained by a court. In all three cases, however, defendant had given little, if any, indication as to the specifics of the insanity defense prior to the court ordering a more detailed proffer by defendant or a pretrial hearing.

In *Meader,* defendant gave Rule 12.2 notice to the government that he intended to rely upon a defense of insanity. At the time the government was notified, defendant's entire insanity defense rested on "limited statements" made by an expert psychologist in a letter to defendant's lawyer. *Meader,* 914 F.Supp. at 657, 1996 WL 65136, at *1. The government moved *in limine* to exclude the defense, presumably on the ground that defendant had not provided evidence sufficient to support the defense. Because the court had no basis upon which to evaluate the validity of defendant's insanity defense or to gauge the admissibility of the evidence upon which the defendant was based, the court ordered a pretrial hearing, at which time the defendant proffered testimony by the expert psychologist who drafted the letter discussing defendant's condition. Based on the expert's elaboration on the statements contained in the letter, the court concluded that defendant had evidence sufficient to support a legitimate insanity defense, and that the evidence could be submitted to the jury.

In *Duggan,* two of the defendants filed last minute Rule 12.2(a) notices of an insanity defense. Defendants filed no papers or affi-

davits from experts explaining the basis for the proposed defense. The court ordered the defendants to file a more detailed statement concerning the basis of the insanity defense. In response, defendants submitted an affidavit by counsel that defendants "acted as if they had 'something which seemed like a psychiatric disorder' and conclusory statements from two doctors that a 'diagnostic possibility exists,' but that an additional four to five months would be need to complete the diagnosis." *Duggan,* 743 F.2d at 80–81. The Second Circuit affirmed both the district court's request for a more detailed proffer and the court's eventual rejection of defendant's proffer as to the insanity defense. Similarly, in *Cameron,* the court hypothesizes that "a specific proffer *might be necessary* if the government ... seeks to foreclose the presentation of an insanity defense because there is insufficient evidence of mental disease of defect." *Cameron,* 907 F.2d at 1058 n. 10 (emphasis added).

All of these cases are distinguishable from the instant case in that, unlike the courts in *Meader, Duggan,* and *Cameron,* this court has more than an adequate basis upon which to evaluate both the validity of defendant's insanity defense and the strength of the evidence upon which it is based. The courts in *Meader, Duggan,* and *Cameron* were all constrained in their ability to evaluate defendant's insanity defense because of the lack of evidence before them. Pretrial hearings or more detailed proffers were either contemplated or ordered in those cases so as to provide the court with a sufficient basis to evaluate defendant's insanity defense and the evidence upon which it is based.

Defendant Rezaq, however, has proffered three detailed psychological reports months in advance of trial, and has allowed himself to be examined by at least three psychiatrists chosen by the government. Thus, the court as well as the government has a sufficient basis to evaluate the validity of defendant's insanity defense as well as admissibility of

the evidence upon which the defense is based. The reports submitted to the government describe in exhaustive detail defendant's personal, political, cultural, and emotional history. Defendant's diagnosis of PTSD, which is the lodestar of his insanity defense—is amply explained and evaluated in each of the three reports already in the possession of the government.

■ The court is satisfied with defendant's proffer of three detailed psychological evaluations. Defendant has made a facial showing that the evidence in support of his insanity defense meets the standards set forth in 18 U.S.C. § 17. The expert evidence, when taken as a whole, suggests that defendant suffered from what appears to be a severe case of PTSD at the time of the offense.[9] Furthermore, the diagnoses appear to be based on acceptable techniques, evaluations, and measuring devices. In light of the consistency among the three diagnoses, the court finds that defendant presented evidence of sufficient quantity and quality to properly raise the insanity defense at trial. Accordingly, the government's request for a pretrial hearing to determine the admissibility and scope of defendant's Rule 12.2(a) evidence shall be denied.

## C. Defendant's Motion to Stay the Court's Discovery Order of December 14, 1995

In light of the court's ruling that defendant's 12.2 notice is timely, and that defendant's affirmative defense of insanity is both viable and based upon evidence admissible the Federal Rules of Evidence, there is no reason to further delay discovery as to the experts that will testify at trial. Accordingly, the court shall deny defendant's motion to stay the agreed upon discovery Order of December 14, 1995, and discovery of expert evidence shall continue as set forth in the December 14, 1995 Order.

## CONCLUSION

For the foregoing reasons, it is hereby

---

9. The government, citing an Eighth Circuit decision in *United States v. Long Crow,* 37 F.3d 1319 (8th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 1167, 130 L.Ed.2d 1122 (1995), suggests that a diagnosis of PTSD is insufficient to support an insanity defense. However, the government's reliance on *Long Crow* is misplaced. Although the court in *Long Crow* "found no cases that treat PTSD ... as a severe mental defect amounting to insanity," the court was careful to note that "[the court does] not reject the possibility that PTSD *could* be a severe mental disorder in certain instances...." *Long Crow,* 37 F.3d at 1324.

ORDERED that the government's motion *in limine* to preclude lay and expert evidence regarding defendant's Rule 12.2 notice and motion for pretrial hearing is GRANTED in part and DENIED in part as follows:

1. The government's motion to preclude defendant from introducing lay and expert testimony and evidence pursuant to 12.2(b) to negate an element of the offense is GRANTED;

2. The government's motion to preclude defendant from introducing lay and expert testimony and evidence pursuant to Rule 12.2(a) to support an affirmative defense of insanity is DENIED;

3. The government's motion for a pretrial hearing to determine the admissibility and scope of defendant's Rule 12.2(a) evidence is DENIED; and

4. Defendant's motion to stay the court's discovery Order of December 14, 1995 is DENIED.

SO ORDERED.